Daniel D. and Agnes H. PALMER,
Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 75–1102.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1975.

Decided Sept. 30, 1975.

Richard L. Braunstein, Dow, Lohnes &
Albertson, Washington, D. C., for appellants.

William S. Estabrook, III, Atty., Tax
Div., Dept. of Justice, Washington, D. C.,
for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and VAN PELT, Senior District Judge.*

GIBSON, Chief Judge.

Appellants, Daniel D. and Agnes H. Palmer (hereafter taxpayers), appeal from that part of a judgment of the United States Tax Court[1] determining that they did not overpay income taxes for the year 1966 due to their alleged undervaluation of 238 shares of corporate stock of the Palmer College of Chiropractic donated to the Palmer College Foundation, a nonprofit corporation. In their 1966 joint return, taxpayers valued the stock at $863 per share. The Commissioner assessed a deficiency challenging their right to a charitable deduction on grounds not at issue here,[2] and later questioned their valuation of the stock in any amount exceeding $310 per share *inter alia* on the ground that other shares of the same close corporation had been sold for $264.74 each in 1964.

The Tax Court rejected the Commissioner's disallowance of the charitable deduction and held that the Commissioner had failed to meet his burden of proving that the value of the stock was less than $863 per share. Additionally, the court ruled that taxpayers raised too late (for the first time in their reply trial brief to the Tax Court) their contention that the stock was actually worth $1,096 per share and concluded that in any event they had failed to meet their burden of proving the stock was worth more than $863 per share. *Palmer v. Commissioner,* 62 T.C. 684 (1974).

The Commissioner no longer challenges the Tax Court's determination that there is no deficiency in the income tax due from taxpayers for 1966.[3] Taxpayers, however, appeal the Tax Court's ruling that their contention of undervaluation could not be considered for the reason that the Commissioner was given neither notice of the claim nor opportunity to object to it. In their informal pretrial memorandum to the Tax Court, taxpayers gave notice that they would offer evidence and ask the court to find that the stock had a 1966 value well in excess of $863 per share. At trial, they offered evidence of a greater value, but it was not until they filed their reply brief in the Tax Court that they specifically requested a finding that the shares were worth $1,096 each. The Tax Court thus concluded that taxpayers had requested the finding for the first time in their reply trial brief and that they had raised the issue too late. Taxpayers contend, however, that the value of the shares was first placed in issue by the Commissioner himself when he challenged the taxpayers' $863 figure as an overvaluation in his amended answer in the Tax Court—after accepting taxpayers' claimed $863 value in his notice of deficiency.

However, in view of the Tax Court's additional holding that taxpayers failed to prove that the value of the stock exceeded the $863 per share claimed on their return, we do not reach the procedural question whether taxpayers waived their claim of undervaluation for failure to raise it in a timely reply to the Com-

---

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. The Tax Court opinion by Judge Simpson is reported at 62 T.C. 684 (1974).

2. The deduction was taken pursuant to a plan to convert the profit-making college into a charitable tax exempt organization. First, the newly created foundation purchased approximately 72 percent of the corporation's shares (priced at $863/share) from a family trust in exchange for a promissory note to be paid with future college income. Secondly, taxpayers donated 238 of their own 818 shares to the

foundation, increasing its holdings to approximately 80 percent control. The foundation immediately initiated a corporate redemption of its shares in exchange for the college's assets. The Commissioner unsuccessfully challenged taxpayers' charitable deduction on the ground that as a "step-transaction" their contribution (followed by the redemption) should be taxed as the equivalent of a dividend—a distribution of assets to the taxpayers followed by a transfer of assets to the foundation.

3. The Commissioner's cross-appeal (No. 74–1911) was dismissed by this court on May 21, 1975, after stipulation by the parties.

missioner's amended tax court answer,[4] or otherwise. The corporation in question owned and operated the Palmer College of Chiropractic as its principal business, activity (approximately 80 percent of its assets) and also engaged in the sale, leasing and ownership of other real estate (approximately 20 percent of its assets). To meet their burden of proving that the value of the donated shares exceeded the $863 claimed on their return, taxpayers called two experts. The experts testified as to the value of the corporation's assets, including real estate and goodwill, and the value of the college as an ongoing profit-making business. The Commissioner presented his own IRS valuation engineer who testified, on a theory partly rejected by the Tax Court, that the shares were worth no more than $310 each.

█ We have carefully considered the record, briefs and arguments of the parties and affirm on the basis of the Tax Court's published opinion on the issue whether the 1966 value of the donated shares exceeded $863. In judging that the taxpayers had not met their burden of proof, the Tax Court was in a better position to evaluate the experts' testimony and exhibits. The taxpayers themselves established the price of $863 per share listed in their 1966 return after considering an independent auditor's assessment of all the corporation's assets. The price of $863 per share was also paid by the foundation when it purchased 2,078.97 corporate shares from the Palmer family trust in the same year, 1966. The Tax Court's conclusion concerning the value of the stock is in conformity with established principles and is supported by substantial evidence upon the record as a whole. *Riss v. Commissioner,* 478 F.2d 1160, 1164 (8th Cir. 1973); *Gloyd v. Commissioner,* 63 F.2d 649, 650 (8th Cir.), *cert. denied,* 290 U.S. 633, 54 S.Ct. 52, 78 L.Ed. 551 (1933).

█ We reject taxpayers' attempt to frame the issue in this appeal as one purely of law by asserting that "[t]here is simply no dispute in the record that on a *pro rata* basis the stock * * * was worth $1,096 per share," and attacking the Tax Court's expressed concern with taxpayers' failure to discount for the fact that theirs was only a minority interest in the corporation. The Tax Court does not have to accept "in toto, in part" or at all expert opinion as to value. *Gloyd v. Commissioner, supra* at 650. The Tax Court's conclusion that the fair market value of the stock did not exceed $863 per share is ultimately a finding of fact and will not be set aside unless shown to be clearly erroneous. *Commissioner v. Duberstein,* 363 U.S. 278, 290–91, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *Bormes v. Commissioner,* 512 F.2d 442 (8th Cir. 1975); *Arc Realty Co. v. Commissioner,* 295 F.2d 98, 101–02 (8th Cir. 1961); Fed.R.Civ.P. 52(a). While it is true that the question of what criteria should be employed for determining value is one of law, *Powers v. Commissioner,* 312 U.S. 259, 61 S.Ct. 509, 85 L.Ed. 817 (1941), we perceive the instant dispute as a broader question involving both determinations of fact and application of "maxims of experience," see *Commissioner v. Duberstein, supra,* 363 U.S. at 287, 80 S.Ct. 1190, by the factfinder.

█ Ultimately, the fair market value is "the price at which property would change hands in a transaction between a willing buyer and a willing seller, neither being under compulsion to buy nor to sell and both being informed" of all the relevant circumstances. *Hamm v. Commissioner,* 325 F.2d 934, 937 (8th Cir. 1963), *cert. denied,* 377 U.S. 993, 84 S.Ct.

---

**4.** Rule 37 of the United States Tax Court Rules of Practice allows a reply to be filed within 45 days from the date of service of the answer. If filed, it should contain "a clear and concise statement of every ground, together with the facts in support thereof, on which the petitioner relies affirmatively or in avoidance of any matter in the answer on which the Commissioner has the burden of proof." Rule 37(b). If a reply is not filed, the affirmative allegations in the answer will be deemed denied absent a motion by the Commissioner for an order to the contrary filed within 45 days. Rule 37(c).

1920, 12 L.Ed.2d 1046 (1964), *quoting O'Malley v. Ames,* 197 F.2d 256, 257 (8th Cir. 1952). As the Tax Court noted in its opinion in the instant case, the value per share of corporate stock can seldom be determined by merely dividing the value of the assets, even including intangibles such as goodwill, by the number of shares outstanding. *Williams v. Commissioner,* 44 F.2d 467, 470 (8th Cir. 1930). Many other considerations enter. *See, e. g., Weber v. Rasquin,* 101 F.2d 62, 64 (2d Cir. 1939). As taxpayers concede, the weight to be given each of the many valuation factors depends upon the facts of each case. *Penn v. Commissioner,* 219 F.2d 18, 21 (9th Cir. 1955). If the Tax Court gave improper weight to any of the elements governing valuation without rendering its conclusion demonstrably wrong, this court should not interfere. Congress has committed questions of stock valuation to the Tax Court. *Penn v. Commissioner, supra* at 21.

The judgment of the Tax Court is affirmed.